**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Javier A,

Petitioner,

v.

Joel L. Brott, Sheriff, *Sherburne County, MN*; Todd Blanche, *Attorney General of the United States*; Markwayne Mullin, *Secretary of the Department of Homeland Security*; David Venturella, *Senior Official Performing Duties of Director of United States Immigration and Customs Enforcement*; David Easterwood, *Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*; Sirce E. Owen, *Acting Director for Executive Office for Immigration Review*, in their official capacities,

Respondents.

File No. 26-CV-4114 (JMB/JFD)

**ORDER**

---

David Wilson, Oliver Anderson-Petroske, Andra Garcia, Wilson Law Group, Minneapolis, MN, for Petitioner Javier A.

Derek Ganzhorn, United States Attorney's Office, Minneapolis, MN, for Respondents Todd Blanche, Markwayne Mullin, David Venturella, David Easterwood, and Sirce E. Owen.

---

This matter is before the Court on Petitioner Javier A's[1] Petition for Writ of Habeas Corpus (Petition) under 28 U.S.C. § 2241 (Doc. No. 1 [hereinafter, "Pet."]), which names

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

Todd Blanche, Markwayne Mullin, David Venturella, David Easterwood, Sirce Owen, and Joel Brott as Respondents. (Pet.). For the reasons explained below, the Court grants the Petition.

**FINDINGS OF FACT**

1. Javier A. is 52-year-old native and citizen of Mexico. (Doc. No. 7-1.)

2. In 1988, Javier A. entered the United States without inspection as a minor. (Pet. ¶¶ 28– 29.)

3. Javier A. is married, lives in a stable home, has close ties to the community, and is a pastor at a church. (Pet. ¶ 33.); (Doc. No. 7-1 at 3.)

4. Javier A.'s criminal history consists of a 2007 conviction of driving without a license and a 2011 conviction of domestic assault that resulted in one year of probation. (Doc. No. 7-1 at 3.)

5. On September 21, 2026, five Immigration and Customs Enforcement (ICE) agents observed a vehicle with a Minnesota license plate pass their location. (Doc. No. 7-1 at 2.) ICE agents then performed a record check and concluded that the vehicle's owner was a non-citizen "present in the United States without authorization." *Id.*[2]

6. ICE agents activated their emergency lights, pulling Javier A. over into a parking spot. *Id.* ICE agents pulled into a position to prevent Javier A. from driving off. *Id.* ICE agents approached Javier A. and asked about his immigration status. *Id.* Javier

[2] The record includes no information concerning how ICE agents reached this conclusion, which necessarily requires drawing inferences from an absence of a record. There is no declaration describing the information reviewed or explaining what information is being stored and searched. The Court cannot credit the officers' conclusion absent some evidence in the record concerning what was searched and who conducted the search.

A. claimed he applied for a T-visa which was currently pending.[3] Javier A. did not present any false or misleading documents to show immigration status. *Id.* The only identifying document he possessed was his Minnesota driver's license. *Id.* at 3. This identification document corroborated statements that Javier A. made to police about his identity.

7. Throughout the encounter, Javier A. was cooperative, and there is no evidence in the record that Javier A. maneuvered the vehicle in such a way as to position it for flight, that any statements made by Javier A. relate to or indicate a desire to flee, that Javier A. has any history of fleeing law enforcement, that Javier A. made any furtive movements or other motions consistent with an intent to flee, or that Javier A. took any actions that would be out of the ordinary.

8. ICE agents informed Javier A. that he was taken into custody for "being present in the United States without authorization." *Id.*

9. A warrant had not been issued at the time Javier A. was stopped by ICE agents. (Pet. ¶ 32.)

10. Javier A. was not provided a bond hearing. *Id.* ¶ 4.

11. Respondents have detained Javier A. at the Sherburne County Jail since being taken into custody. *Id.* ¶ 34.

---

[3] Although the narrative report discussing Javier A.'s detention refers to a records check (Doc. No. 7-1 at 2), the Court has no information concerning what database or report was reviewed to support the conclusion that there was no pending visa application. Respondents filed no declaration concerning any database or stored information that could be relied on to make such a conclusion. Absent this evidence, the Court cannot make any factual finding concerning whether Javier A. does or does not have a pending visa application.

12. On September 23, 2026, Javier A. filed this Petition. (*See* Pet.) On September 24, 2026, the Court ordered Respondents, among other things, to respond to the Petition on or before 11:00 a.m. on September 25, 2026. (Doc. No. 4.) Respondents filed a timely response to the Petition. (Doc. No. 6.)

## DISCUSSION

In his Petition, Javier A. seeks immediate release, arguing that Respondents violated the Fourth Amendment and the warrantless arrest requirements of 8 U.S.C. § 1357(a)(2) and that Respondents deprived him of both procedural and substantive due 5 process in violation of the Fifth Amendment. For their part, Respondents argue that they satisfied the warrantless arrest requirements of section 1357(a)(2).[4] The Court agrees with Javier A. and grants the Petition.

### A. Right to Habeas Relief

A writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual

[4] Respondents also reference provisions of section 1225(b)(2), as interpreted by the Eighth Circuit. (*See* Doc. No. 6 at 2, 6 (citing *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026) (concluding that section 1225(b)(2) requires the mandatory detention of noncitizens, without any individualized determination and regardless of whether the noncitizen is encountered at the border at the time of entry or in the interior of the United States months, years, or decades after entry)).) *But see Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1176, 1180 (9th Cir. 2026) (rejecting Respondents' "newfound interpretation" as inconsistent with "the assertedly unambiguous language of the statute" and because "it raises various textual and interpretive problem," citing similar holdings from the Second, Sixth, Tenth, and Eleventh Circuits). In light of the Court's decision under section 1357(a)(2), it need not address Respondents' interpretation of section 1225(b)(2).

detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

**B. Invalidity of Warrantless Arrest**

Javier A. argues that Respondents took him into custody pursuant to an invalid warrantless arrest under 8 U.S.C. § 1357(a)(2). (Pet. ¶ 2). Respondents disagree with Javier A.'s assertion that detaining officers failed to comply with section 1357(a)(2) when taking him into custody. (Doc. No. 6 at 26–27.)

ICE must have valid statutory authority to take a non-citizen into custody. *E.g.*, *Venancio P.J. v. Blanche,* No. 26-CV-2740 (ECT/JFD), 2026 WL 1862252, at *2 (D. Minn. June 29, 2026).[5] The parties agree that no warrant was issued prior to Javier A.'s

[5] The parties agree that section 1357(a)(2) applies. *See Venancio P.J.*, 2026 WL 1862252 at *3 (noting that section 1357(a)(2) "appl[ies] to warrantless immigration arrests of individuals subject to mandatory detention under § 1225(b)(2)(A)" (citing *Francisco M.A. v. Blanche*, No. 26-CV-2032 (JRT/EMB), 2026 WL 1229701, at *2 (D. Minn. May 5, 2026)); *Fernando C.C. v. Bondi*, No. 26-CV-1235 (LMP/JFD), 2026 WL 446408, at *2 (D. Minn. Feb. 17, 2026) ("Accordingly a warrantless arrest under 8 U.S.C. § 1357(a)(2) is a threshold exception to arrest by warrant and, after the arrest, detention may proceed under Sections 1225, 1226 and 1231."); *Espinoza-Avalos v. Blanche*, No. 8:26-CV-0191, 2026 WL 1396593, at *2 (D. Neb. May 19, 2026); *Jose Luis G.G. v. Noem*, No. 5:26-CV-05023 (KES), 2026 WL 836807, at *2–3 (D.S.D. Mar. 26, 2026)).

detention on September 21, 2026, and that Respondents meant to detain Javier A. pursuant to section 1357(a). (Doc. No. 6 at 19.) Section 1357(a)(2) permits an immigration officer to "arrest any [non-citizen] in the United States" without a warrant "if he has reason to believe that [1] the [non-citizen] . . . is in the United States in violation of any such law or regulation *and* [2] is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2) (emphasis added). The Eighth Circuit has interpreted the term "reason to believe" in section 1357(a)(2) to "mean[] constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). Respondents argue that the second prong[6] of section 1357(a)(2) is satisfied because Javier A. "had access to his vehicle with the keys in the ignition to flee if officers left to obtain a warrant, he has resided in the United States without registering with immigration officials, and he lied about his immigration status when asked by officers." (Doc. No. 7-1 at 3.)

However, the Court concludes that the second prong of section 1357(a)(2) is not satisfied. The facts here are readily distinguishable from *Quintana*, where officers had reason to believe the non-citizen was likely to escape because they were unable to verify his identity or his claims of legal entry into the United States, and where the non-citizen was suspected of a criminal drug-trafficking offense. *Id.* at 1238–41.

Here, by contrast, the record shows that ICE agents were readily able to verify Javier A.'s identity. Moreover, even though Javier A. has a short criminal history, at the time of his stop he was not suspected of having committed a crime, unlike the non-citizen in

[6] The parties do not dispute that the first statutory requirement—that Javier A. is a non-citizen who lacks legal status to reside in the United States—has been met.

*Quintana*. *Id.* at 1238; (Doc. No. 7-1 at 2.) Javier A. was cooperative, and the record contains no evidence of any conduct suggesting an intent to escape: he did not maneuver the vehicle in any way to indicate a likelihood of escape; he made no statements that could show a desire to escape; he has no history of fleeing police; he made no furtive movements or other motions consistent with an intent to escape; and took no actions that would be out of the ordinary for a garden variety traffic stop.

Absent such evidence in the record, Respondents arguments amount to a per se rule that any non-citizen who the officer believes is removable and who has "occupancy of an operable motor vehicle . . . is a flight risk" and is necessarily likely to escape. (Doc. No. 6 at 21.) However, such a rule would effectively render the second statutory requirement of section 1357(a)(2) meaningless and, to the extent that it would justify taking all removable non-citizens into custody, it would also violate constitutional due process. *See, e.g.*, *Quintana*, 623 F.3d at 1239 (stating that "the Fourth Amendment applies to arrests of illegal [non-citizens]" and interpreting the phrase "reason to believe" in section 1357(a)(2) to mean "constitutionally required probable cause"). The facts cannot support the conclusion that officers had constitutionally required probable cause to believe Javier A. was likely to escape.

Thus, Javier A. has shown that ICE's detention of him on September 21, 2026, was unlawful and he is entitled to release.[7] *E.g.*, *Felix Alberto J.M. v. Blanche*, No. 26-CV2944

---

[7] Although the Court need not address the question of whether Javier A.'s detention without bond violates the Fifth Amendment, it nevertheless alternatively concludes that, on balance, the *Mathews v. Eldridge* due-process factors tip in Javier A.'s favor. Javier A. has a significant private interest at stake (i.e., his liberty, his detention in a carceral setting, his

(LMP/DLM), 2026 WL 1906596, at *5 (D. Minn. July 2, 2026) (concluding Respondents' detention of petitioner was an invalid warrantless arrest and that petitioner was entitled to release); *Venancio P.J.*, 2026 WL 1862252, at *3.

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED as follows:

1. Respondents are ORDERED to release Petitioner Javier A. immediately, without conditions, and in any event no later than 4:00 p.m. CT on October 2, 2026.

2. On or before 11:00 a.m. CT on October 5, 2026, counsel for Respondents shall file a letter affirming that they have released Petitioner Javier A.

3. On or before 11:00 a.m. CT on October 5, 2026, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation). Respondents must submit each of the following three forms to affirm return of Petitioner's property: I-77, I-216, and G-589. If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property." If Respondents

---

inability to earn a living, and his separation from his wife); the risk of erroneous deprivation through incarceration is needlessly high when inexpensive procedures such as a bond hearing protect against erroneous deprivations of liberty and separation of families; and the federal government has very little interest in incarcerating individuals en masse who pose little or no risk of flight or danger to the community. Thus, Javier A.'s ongoing detention is also unlawful for this reason as well. *See, e.g.*, *R.M. v. Blanche*, No. 26-CV 2283 (LMP/DLM), 2026 WL 1506306 (D. Minn. May 29, 2026) (concluding that respondents' mandatory detention without bond under 8 U.S.C. § 1225(b)(2) and *Avila* violated petitioner's rights to procedural due process and ordering a bond hearing); *Jesus Alejandro G.A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138 (D. Minn. May 18, 2026) (same).

cannot provide one or more of these forms, Respondents must address why they are unable to do so.

4. Petitioner Javier A. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

5. To the extent Petitioner Javier A. seeks additional relief, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 1, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court